UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CRIMINAL NO. 10-40-DLB-CJS

UNITED STATES OF AMERICA                                              PLAINTIFF

v.                    **REPORT AND RECOMMENDATION**

JAMES M. TUNGATE                                                      DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \*

## Introduction

This matter is currently before the Court on Defendant Tungate's Motion to Suppress Evidence (R. 16). In his motion, Tungate moved for suppression of evidence obtained in violation of *Franks v. Delaware* and the Fourth or Fourteenth Amendment. (*Id.*). He also moved to suppress any statements made in violation of his Fifth, Sixth, or Fourteenth Amendments. (*Id.*). Defendant sought a *Franks* hearing to determine the validity of the affidavit supporting the warrant. The United States responded that a *Franks* hearing was unnecessary because Defendant failed to make a "substantial preliminary showing" as required before such a hearing may even be held. (R. 22).

The Court scheduled oral arguments to determine whether Defendant had made the requisite "substantial preliminary showing," which focused on whether Defendant consented to Officer Lawrence's entry into his residence. (R. 17). Both parties called witnesses to testify on the issue of consent, and the Court granted Defendant's oral motion for post-hearing briefing. (R. 23). Having all relevant materials, the issue is now ripe for review and a Report and Recommendation pursuant

1

to 28 U.S.C. § 636(b)(1)(B). (R. 3). For the reasons that follow, it is recommended that Defendant's Motion for a *Franks* hearing be **denied.**

**Discussion**

Affidavits that support search warrants are entitled to a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). In order to receive a hearing challenging the affidavit's validity, otherwise known as a *Franks* hearing, a defendant must make a substantial preliminary showing that a statement within the affidavit is intentionally or recklessly false. *Id.* at 155-56; *see also United States v. Atkin*, 107 F.3d 1213, 1216-17 (6th Cir. 1997). A defendant's challenge must be more than conclusory, as he must specifically allege the part of the warrant that is false and support this allegation with proof. *Franks*, 438 U.S. at 171. Furthermore, these allegedly false statements must be material, and a defendant must demonstrate that they were included deliberately or with reckless disregard. *Id.*

Here, Defendant claims that the affidavit includes a statement that Defendant consented to Officer Lawrence's entry into his home and that this statement is false because he did not consent. (R. 16, at 5). Accordingly, to receive a *Franks* hearing, Defendant must make a substantial preliminary showing that this statement is false and that it was included in the affidavit deliberately, or with reckless disregard for the truth.

Consent must be "'unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion.'" *United States v. Worley,* 193 F.3d 380, 385-86 (quoting *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992)). Several factors are used to determine whether consent was valid, including: "age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her

constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *United States v. Elkins*, 300 F.3d 638, 647 (6th Cir 2002). After considering all of the testimony, the Court concludes that Defendant gave valid consent for Officer Lawrence to enter his residence and, therefore, that Defendant has failed to make a substantial preliminary showing that the affidavit statement of consent is false and was included in the affidavit deliberately, or with reckless disregard for the truth.

Since conflicting testimony was presented as to whether Officer Lawrence had consent to enter Defendant's home, a credibility determination regarding the conflicting testimony must be made. "A trial court is given wide latitude to assess the credibility of witnesses," but any determination must be consistent with the objective evidence. *United States v. Haynes*, 301 F.3d 669, 679 (6th Cir. 2002). At the oral arguments, Defendant testified that he answered the door, at which time he and Officer Lawrence had a brief conversation. (R. 26, at 12). Officer Lawrence then allegedly asked "do you mind if I come in and look around?" (*Id.* at 10, 12). Defendant answered "yes," but Officer Lawrence proceeded to quickly walk by him. (*Id.* at 10, 13). Defendant testified that he caught up with Officer Lawrence in his kitchen, which is at the back of the house, and told him to "get the hell out of my house." (*Id.* at 11).

Officer Lawrence also testified that the two had a brief conversation after Defendant answered the door. (*Id*. at 22). However, the remainder of Officer Lawrence's testimony differs. Officer Lawrence testified that he asked Defendant's permission to enter the house to search for a walker that was missing from his mother's house. (*Id*. at 23). He testified that Defendant gave him permission, although he was unable to recall the exact words that Defendant used. (*Id*.). Officer Lawrence then testified that he cautiously entered the residence at a normal pace, as he was entering

an unknown situation. (*Id.* at 24). According to Officer Lawrence, Defendant did not ask him, or any other officers, to leave the house upon their arrival. (*Id.*).

Defendant's claim that he denied Officer Lawrence permission to enter his home is not credible. It is illogical that Defendant would object so strongly to Officer Lawrence's entry into his house, and yet allow both Officer Sweeney and Officer Eldridge to enter without immediate verbal objection, even though he testified that neither additional officer asked for permission to enter his home. Officer Sweeney testified that he entered Defendant's home after receiving permission, they talked in the living room, and during this time, Defendant never indicated that he wanted Sweeney to leave. (*Id*. at 35-36). Officer Sweeney further testified that it was Defendant who walked deeper into the house while they were speaking, and Officer Sweeney followed to continue the conversation. (*Id*. at 36). Officer Eldridge testified that when he entered Defendant's home, Officer Lawrence asked him to stay with Defendant while Officer Lawrence left the house, and Officer Eldridge remained alone with Defendant. (*Id*. at 39). Officer Eldridge testified that during this time, Defendant never asked him to leave and, in fact, they chatted casually about Defendant's previous military service. (*Id*. at 40). Officer Eldridge testified that later in the day, Defendant expressed concern as to why the officers were still in his house and what was taking so long, but nothing comparable was said upon the officers' initial arrival. (*Id.*).

Furthermore, Defendant's testimony as to the speed at which Officer Lawrence entered the house casts doubt on the credibility of this testimony. Defendant testified that Officer Lawrence quickly entered and immediately walked to the rear of the house. (*Id*. at 10-11). If, as both parties agree, Officer Lawrence asked permission to enter the residence to look around, it is unlikely that Officer Lawrence would immediately walk to the back of the house, without first at least glancing

around the rooms through which he walked. Additionally, as Officer Lawrence testified, he was entering an unknown environment and did not know what he might find. He had no idea whether Defendant was alone in the home or whether he was armed. Considering that Officer Lawrence was originally speaking to Defendant about an assault/burglary that involved his mother and in which he was a suspect, that he would move quickly into a potentially dangerous situation would be contrary to the overall circumstances presented and the officer's training.

Furthermore, neither Defendant's own testimony nor defense counsel's cross-examination of these witnesses discredits their statements. Instead, the officers thoroughly and consistently testified to the events that occurred. The only contradicting evidence offered was Defendant's own testimony. In weighing the evidence, this testimony alone, on balance, is insufficient to cast doubt on the veracity of the officers' testimony.

Defendant primarily argues that he did not give consent, rather than that any consent given was invalid. However, to the extent that Defendant argues that any purported consent was invalid, the Court disagrees. Although Officer Lawrence does not recall the exact words either he or Defendant used during the exchange, he testified that he had no doubt that he had permission to enter the house. (R. 26, at 25). Furthermore, he testified that if he had harbored any concerns regarding whether he had consent, he would have asked another question to dispel any ambiguity. (*Id.* at 26).

Other than Defendant's statement that he did not give consent at all, Defendant fails to argue in what way any purported consent would not satisfy the standard. To the extent that Defendant argues that he merely acquiesced to Officer Lawrence's entry because the officer brushed past Defendant as he entered the house, as Defendant so testified, (*id.* at 13), this appears to the Court to again turn on credibility, as Officer Lawrence testified that he in no way touched Defendant as he

5

entered the house. (*Id*. at 23). Based upon the evidence at hearing, the Court concludes that Defendant gave Officer Lawrence consent to enter his house and that this consent was valid.

**Conclusion**

In light of the finding on the issue of consent, Defendant fails to make the substantial preliminary showing required to warrant a *Franks* hearing.

Therefore, it is **RECOMMENDED** that Defendant's request for a *Frank's* hearing be **DENIED,** and that Defendant's motion "to suppress any evidence seized from the defendant, and or his residence, as it was obtained in violation of the rule set forth in *Franks*...." (R. 16) should also be **DENIED.**

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another's objections within 14 days of being served with those objections. Fed. R. Civ. P. 72(b)(2).

Dated this 5th day of November, 2010.



Signed By:
*Candace J. Smith*
**United States Magistrate Judge**

G:\DATA\10-40 Franks R&R01.wpd